Filed 7/16/14  In re S.B. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,  Plaintiff and Respondent,  v.  S.B.,  Defendant and Appellant. | A140335  (Contra Costa County Super. Ct. No. J1301068) |

S.B. (Minor) appeals from a disposition order committing him to an out-of-home placement.  (Welf. & Inst. Code,[1] § 602.)  He contends the trial court abused its discretion when it removed him from his parents' custody and ordered a more restrictive out-of-home placement than the one originally recommended.  We shall affirm the order.

## I. BACKGROUND

### A. The Underlying Offense

The Solano County District Attorney filed a juvenile wardship petition (§ 602, subd. (a)) on July 31, 2013, alleging Minor had committed second degree robbery (Pen. Code, § 211) (count one).  The petition was later amended to add allegations that Minor had committed misdemeanor giving false information to a police officer (Pen. Code,

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

§ 148.9, subd. (a)) (count two), felony grand theft (Pen. Code, § 487, subd. (c)) (count three), and misdemeanor battery (Pen. Code, § 242) (count four). Pursuant to a negotiated disposition, Minor admitted to counts three and four, and counts one and two were dismissed.

According to the probation report, Minor and his uncle, also a minor, approached the victim outside a Wells Fargo bank on July 30, 2013. The victim had returned to his vehicle after withdrawing $100 from the automated teller machine. The uncle stood at the victim's window, pointed the gun at him, and demanded money. The victim handed over his wallet. Both suspects ran away and the victim drove to a nearby gas station to wait for the police. The police were able to detain the suspects nearby with the description given by the victim. The suspects informed the police they were visiting their grandmother in a nearby apartment complex. Police visited the apartment and the grandmother consented to a search. The police found clothing that matched the victim's description of the suspects, a BB handgun, and four of the victim's credit cards. The police also found the victim's wallet in a nearby dumpster. The victim positively identified his belongings and the weapon.

## B. Recommendation and Orders

At an October 2, 2013 hearing in Contra Costa juvenile court,[2] Minor's mother informed the court that Minor's school behavior was good and he was keeping up with his academics.[3] However, he was defiant and disrespectful at home, and was not coming straight home after school. His mother also informed the court that Minor had admitted smoking marijuana. The juvenile court ordered Minor to be supervised at home with an electronic monitor, pending disposition.

---

[2] At this hearing, the case was transferred from Solano County, where the crime took place, to Contra Costa County, where Minor lives with his mother.

[3] Minor's mother had prior convictions for possession of fraudulent checks, and had been arrested for child cruelty in 2012. Minor's father had prior convictions for possession of a loaded weapon, false identification, driving under the influence, possession of a controlled substance, and domestic violence. There were seven closed referrals to Child Protective Services and one open referral.

2

On October 16, 2013, Minor was screened for the Orin Allen Youth Rehabilitation Facility (OAYRF or Ranch). The facility's director, Michael Newton, found Minor acceptable for a nine-month regular program at OAYRF if he could be medically cleared.

## C. Home Supervision Violation

On October 30, 2013, the probation officer reported that Minor was not taking his home supervision seriously. The probation report stated that Minor had five unexcused absences and 13 tardies.[4] Minor's mother confirmed to the probation officer that Minor had left home without permission. The juvenile court ordered Minor to be detained in juvenile hall until the dispositional hearing because he had violated his home supervision.

## D. Medical Condition and Ranch Placement

Minor suffers from epilepsy, and at hearings on November 6 and 12, the juvenile court considered whether the ranch could adequately care for this condition. Dr. Dennis E. McBride, the juvenile hall doctor, reported that he did not see any reason that Minor could not go to the Ranch. The probation officer stated that the Ranch director, Mr. Newton, had explained that the Ranch staff were trained in basic first aid and CPR, which includes how to handle epileptic seizures. The court asked Minor's mother about any medications Minor was currently taking. She explained that he was prescribed Ativan, which was like an "EpiPen" and would need to be administered in the event of a seizure lasting more than five minutes. The probation officer testified that although the Ranch medical staff were trained to handle epileptic seizures, they were not qualified to administer that medication.

At the November 13 hearing, Minor's mother introduced a letter from Minor's nurse practitioner describing Minor's epilepsy and the medication, Ativan, she prescribed him. She stated that Ativan was available for Minor to use if he had a seizure lasting 15 minutes or longer. However, Minor had not had a seizure since September 2011. She believed the Ranch medical staff would "not need to have this medication on hand, but

---

[4] We are unable to verify these numbers from the attached school attendance record. The probation officer later reported Minor had three unexcused absences.

rather can provide appropriate support on an as-needed basis."  In light of this letter, Dr. McBride stated that the Ranch would not be a safe environment for Minor and Mr. Newton said Minor would not be accepted at the Ranch.

### E. Disposition Hearing

At the November 14, 2013 disposition hearing, the probation officer reported that while in juvenile hall, Minor had been disobeying rules and had threatened to slap a staff member.  He also destroyed county property by poking a hole in his mattress and ripping a page out of a library book.  He was seen as a "level three" resident because of his defiant and manipulative behavior.  Due to his poor behavior, he was isolated from the group and only brought out for a limited amount of time to use the restroom or to exercise.

The juvenile court adjudged Minor a ward of the court and ordered that the probation officer place Minor in a court-approved home or institution.

## II. DISCUSSION

Minor contends the juvenile court abused its discretion in ordering an out-of-home placement.  He argues the disposition was inconsistent with the rehabilitative goals of the juvenile justice system, and that the juvenile court improperly rejected less restrictive alternatives.

### A. Legal Standards

Section 202, subdivision (a), provides that the purpose of the juvenile court law is "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public."  For purposes of the juvenile court law, " 'punishment' means the imposition of sanctions.  It does not include retribution . . . ."  (§ 202, subd. (e).)  Permissible sanctions include payment of a fine, rendering of compulsory service, "[l]imitations on the minor's liberty imposed as a condition of probation or parole," "*[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch,*" and

"*[c]ommitment of the minor to the Division of Juvenile Facilities, Department of Corrections and Rehabilitation.*" (§ 202, subd. (e)(1)–(5), italics added.) Our Supreme Court has stated that "[t]he statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' [Citation.] Flexibility is the hallmark of juvenile court law, . . . [citation] [and] the juvenile court has long enjoyed great discretion in the disposition of juvenile matters." (*In re Greg F.* (2012) 55 Cal.4th 393, 411.)

"When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider '(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history.' " (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 484–485.) In addition, "other relevant policies of juvenile court law require that the court consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.) Juvenile courts have broader discretion " 'to impose conditions to foster rehabilitation and to protect public safety.' " (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1152.) "[T]he court [can] choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. [Citation.] . . . [T]he court [does not] necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)

" 'An order of disposition, made by the juvenile court, may be reversed by the appellate court only upon a showing of an abuse of discretion. . . .' [Citation.] It is not the responsibility of this court to determine what we believe would be the most appropriate placement for a minor." (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1135.) We must review the whole record in the light most favorable to the order below and will not disturb the juvenile court's findings when there is substantial evidence to support them. (*Id.* at p. 1134; *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.)

5

**B. The Juvenile Court Did Not Abuse Its Discretion**

We see no abuse of the juvenile court's broad discretion here. The court noted that the offense was serious and that minor needed "a lot of structure to try to get him on the right track." The record supports this conclusion. There is evidence that while Minor was in mother's custody, he was defiant and "out of control," he was frequently tardy to class and had unexcused absences, his grades were poor, he was in danger of failing some of his classes, and he was gone one night without permission. He had been smoking marijuana since age 13, and there was evidence he was continuing to do so while in mother's custody. Moreover, while in juvenile hall, he threatened a staff member, destroyed county property, and disobeyed rules. Using the Juvenile Assessment and Intervention System, the probation department had determined Minor was at high risk for reoffense. On these facts, the juvenile court could reasonably conclude Minor should be placed outside his home.

Minor contends, however, that the juvenile court abused its discretion by not considering less restrictive alternatives and in particular that the evidence does not support its decision not to place him in the Ranch. We disagree. Minor's mother said that Minor would need to take Ativan if he had a seizure lasting longer than five minutes. Although minor's nurse practitioner stated that Ativan would need to be used only for seizures lasting more than 15 minutes, the record shows that the Ranch staff could not administer the medication regardless of how long the seizure lasted. Moreover, Dr. McBride had stated the Ranch would not be safe for Minor from a medical standpoint, and the Ranch's director had said Minor would not be accepted at the Ranch. This record supports the juvenile court's decision not to place Minor at the Ranch.

## III. DISPOSITION

The order is affirmed.

_____
Rivera, J.

We concur:


_____
Reardon, Acting P.J.


_____
Humes, J.